No. 7 February 9, 2017 29

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

DONOVAN ROBERT CARLTON,
aka Norman Spencer,
*Petitioner on Review.*

(CC 10CR0836; CA A150855 SC S063917)

En Banc

On review from the Court of Appeals.*

Argued and submitted November 10, 2016.

Ingrid A. MacFarlane, Chief Deputy Defender, Salem, argued the cause and filed the brief for petitioner on review. Also on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

BREWER, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed in part and affirmed in part, and the case is remanded to the circuit court for further proceedings.

_____
* Appeal from Josephine County Circuit Court, Pat Wolke, Judge. 275 Or App 60, 364 P3d 347 (2015).

**BREWER, J.**

The issue in this criminal case is whether defendant's previous convictions under a California criminal statute were for "comparable offenses" to a qualifying Oregon offense under ORS 137.719(3)(b)(B),[1] for purposes of the imposition of life sentences on his current convictions for the Oregon offense of first-degree sexual abuse.[2] The trial court imposed life sentences for defendant's current offenses after concluding that they were comparable to defendant's

---

[1] ORS 137.719 provides:

"(1) The presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence.

"(2) The court may impose a sentence other than the presumptive sentence provided by subsection (1) of this section if the court imposes a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons.

"(3) For purposes of this section:

"(a) Sentences for two or more convictions that are imposed in the same sentencing proceeding are considered to be one sentence; and

"(b) A prior sentence includes:

"(A) Sentences imposed before, on or after July 31, 2001; and

"(B) Sentences imposed by any other state or federal court *for comparable offenses*.

"(4) As used in this section, 'sex crime' has the meaning given that term in ORS 163A.005"

(Emphasis added.)

When defendant committed his Oregon offenses, ORS 137.719(4) referred to the definition of "sex crime" provided in ORS 181.594. However, the latter statute was renumbered (without changes to the statutory text) as ORS 181.805 in 2013, and then as ORS 163A.005 in 2015. For ease of reference, we refer to ORS 163A.005(5) in this opinion.

[2] ORS 163.427 provides:

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age;

"(B) The victim is subjected to forcible compulsion by the actor; or

"(C) The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless; or

"(b) Intentionally causes a person under 18 years of age to touch or contact the mouth, anus or sex organs of an animal for the purpose of arousing or gratifying the sexual desire of a person.

"(2) Sexual abuse in the first degree is a Class B felony."

prior California offenses, and the Court of Appeals affirmed. *State v. Carlton*, 275 Or App 60, 364 P3d 347 (2015). Because we conclude that the prior offenses were not comparable to a qualifying Oregon offense, we reverse the decision of the Court of Appeals, and we affirm defendant's convictions but reverse his sentences and remand to the circuit court for resentencing.

## FACTS

Defendant was charged with three counts of first-degree sexual abuse for putting his hands down the pants of a 7-year-old girl, referred to as A, in multiple incidents. One of the counts also charged defendant with touching A's breast.[3] While investigating defendant's conduct, police discovered that he had been using an alias and actually was Donovan Robert Carlton, a convicted sex offender from California. Under the name Carlton, defendant had three prior convictions for violating California Penal Code section 288—two in 1986, and one in 1993—by subjecting a victim under the age of 14 to "sexual contact."

In his 1986 conviction, defendant was found guilty in Count 1 of committing the offense of "lewd and lascivious conduct upon a child," when he

> "did willfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of [D], a child under the age of fourteen years, to wit: NINE (9) years of age, with the intent of arousing, appealing to and gratifying the lust, passion and sexual desires of the said defendant and of said child."

Defendant was found guilty in Count 3 of violating the same statutory provision, in the same manner, but involving a different child. Although the court initially suspended imposition of sentence in that case, it later revoked defendant's probation and imposed a six-year prison term. In 1993, defendant was sentenced to an additional six-year prison

---

[3] Defendant also was charged with one count of failure to report as a sex offender (*former* ORS 181.599 (2011), *renumbered as* ORS 181.812 (2013)) and two counts of felon in possession of a firearm (ORS 166.270). The trial court severed the failure to report charge and dismissed the felon in possession charges. Those charges are not at issue here.

term for yet another conviction of violating Cal Penal Code § 288(a).[4]

The jury in this case returned a guilty verdict against defendant on all three counts. Before sentencing, the state submitted a memorandum recommending that defendant be sentenced to consecutive life prison terms under ORS 137.719 on Counts 1 and 2, and to a concurrent life term on Count 3. In support of its recommendation, the state relied on defendant having been twice convicted of violating Cal Penal Code § 288(a) in 1986 and having been once again convicted of the same offense in 1993. According to the state, those convictions were for offenses that were comparable to defendant's current offenses for purposes of ORS 137.719(3)(b)(B). In his reply memorandum, defendant asserted that the California offenses were not comparable to first-degree sexual abuse under ORS 163.427 because the Oregon offense had different elements from the California offense, which swept more broadly.

The trial court agreed with defendant that the California offense was broader than Oregon's crime of first-degree sexual abuse in two respects. First, the court noted that, unlike ORS 163.427, the California offense did not require the touching of a sexual or other intimate part of a victim. Second, the court noted that the California offense did not require touching for the purpose of arousing or gratifying the sexual desire of the actor or the victim but, instead, could be proved if touching occurred for the additional purpose of appealing to or gratifying the "passion" of the actor or the victim. Despite those differences, the court concluded that the offenses were comparable, because (following Court of Appeals case law) both offenses were "aimed at the same wrong." Accordingly, the trial court imposed a life sentence on each count in this case under ORS 137.719(1).

Defendant appealed, arguing as pertinent here, that the trial court erred in relying on his California convictions to impose life sentences for his current Oregon offenses

---

[4] The state offered only the judgment to prove the 1993 conviction and sentence. Accordingly, no additional information about the basis for that conviction is in the record.

under ORS 137.719.[5] The Court of Appeals issued a written opinion affirming the sentences. In the opinion, the Court of Appeals reviewed the text of Cal Penal Code § 288 and ORS 163.427, and, relying on dictionary definitions of the word "comparable," held that, as pertinent here, that term "means having enough like characteristics or qualities to make comparison appropriate." *Carlton*, 275 Or App at 65. The Court of Appeals ultimately concluded that the offenses were comparable:

> "The text of ORS 163.427, read with the definition contained in ORS 163.305(6), and [Cal Penal Code § 288] is similar in several respects. In general, both the Oregon and California statutes aim to proscribe physical contact with children under the age of 14 made with the intent of arousing or gratifying the sexual desires of the perpetrator or the victim. Furthermore, even though, unlike the Oregon statute, a conviction under [Cal Penal Code §288] does not require that a defendant touch a specific sexual or intimate part of a child, it nevertheless requires that the touching have a sexual purpose, *i.e.*, that it constitutes a 'lewd and lascivious act.' *See People v. Martinez*, 11 Cal 4th 434, 444, 45 Cal Rptr 2d 905, 903 P2d 1037 (1995) (explaining that 'sexual gratification must be presently intended at the time such "touching" occurs' but that a 'lewd or lascivious act can occur through the victim's clothing and can involve "any part" of the victim's body'). The statutes need not be identical given the broad definition of 'comparable.' *See* [*State v. Escalera*, 223 Or App 26, 32, 194 P3d 883 (2008), *rev den*, 345 Or 690 (2009)]. It is sufficient that the statutes share enough like characteristics for them to be worthy of comparison, which they do. *Id.* (clarifying that 'comparability does not require that the foreign statute have the same use, role, or characteristics' (emphasis added)). Thus, we readily conclude that the statutes in question are comparable for the purposes of ORS 137.719."

*Id.* at 66-67. Accordingly, the court upheld defendant's sentences. *Id.* at 68.

---

[5] Defendant also argued before the Court of Appeals that the trial court erred in permitting the prosecutor to express his personal opinion about defendant's credibility and in instructing the jury that the agreement of 10 or more jurors was sufficient for a verdict. Those arguments are not at issue on review.

On review, defendant asserts that, because the California criminal statute captures a broader spectrum of conduct than any qualifying Oregon offense, the trial court and the Court of Appeals erred in concluding that the California offenses were comparable, and this case should be remanded for resentencing. The state responds that the Court of Appeals used the correct definition of "comparable" in its analysis, and that the trial court properly imposed life sentences in this case, because first-degree sexual abuse (ORS 163.427) and attempted first-degree sexual abuse (ORS 161.405) are comparable to defendant's California offenses.

## ANALYSIS

We review for errors of law the trial court's conclusion that defendant's prior California offenses were "comparable," within the meaning of ORS 137.719(3)(b)(B), to a qualifying Oregon offense. *See State v. Gaines*, 346 Or 160, 162, 206 P3d 1042 (2009). In interpreting a statute, a court's task is to ascertain the meaning most likely intended by the legislature that enacted it. *Id.* at 171. The best evidence of legislative intent is the text of the statute itself, considered in its context. When appropriate, a court also may consider legislative history and canons of statutory construction. *Id.* at 171-73.

ORS 137.719(1) prescribes as the presumptive sentence for a felony sex crime, "life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence." Pursuant to ORS 137.719(4), "sex crime" is defined under ORS 163A.005(5), which includes "sexual abuse in any degree." ORS 163A.005(5)(d). Under ORS 137.719(3)(b)(B), a prior sentence includes "[s]entences imposed by any other state or federal court for comparable offenses."

The legislature has not defined "comparable offenses," but the term consists of words of common usage, and the determination of their ordinary meanings can be aided by consulting a contemporary dictionary. *See State v. Newman*, 353 Or 632, 641, 302 P3d 435 (2013) ("We have recognized that 'conscious' as used in ORS 161.085(2) is a

word of common usage. Accordingly, we turn to the dictionary for further guidance \*\*\*." (Citation omitted.)).

The dictionary definitions of "comparable" are:

"**1 :** capable of being compared: **a :** having enough like characteristics or qualities to make comparison appropriate—usu. used with *with* <differing from steel in some of the circumstances … but ~ with steel in respect of the necessity for a centralized control —Thorstein Veblen>

"**b :** permitting or inviting comparison often in one or two salient points only—usu. used with *to* <not too far below Jonson to be ~ to that master's work —T.S. Eliot> <hot cornbread baked with squash seeds—an Indian delicacy ~ to raisin bread —Willa Cather> **2 :** suitable for matching, coordinating, or contrasting **:** EQUIVALENT, SIMILAR <samples of subtlety … which made most of the ~ performances of the season sound clumsy —Irving Kolodin> <we have information about Arctic regions but lack ~ data for the Antarctic> **syn** see LIKE[.]"

*Webster's Third New Int'l Dictionary* 461 (unabridged ed 2002).

Of course, dictionary definitions are guides for discernment, not blunt instruments. *See [State v. Cloutier](#)*, 351 Or 68, 96, 261 P3d 1234 (2011) (noting that dictionaries "do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used" (emphasis in original)). The explanatory notes for *Webster's* instruct that the boldface arabic numerals in its definitions "separate the senses of a word that has more than a single sense" and that the boldface lowercase letters "separate coordinate subsenses of a numbered sense or sometimes of an unnumbered sense." *Id.* at 17a (notes 12.1 and 12.2). The notes further explain:

"The system of separating by numbers and letters reflects something of the semantic relationship between various senses of a word. It is only a lexical convenience. It does not evaluate senses or establish an enduring hierarchy of importance among them. The best sense is the one that most aptly fits the context of an actual genuine utterance."

*Id.* (note 12.4). Moreover, the order of senses is merely historical; that is, "the one known to have been first used in

English is entered first." *Id*. (note 12.5). Finally, the notes explain that, when two or more cross-references follow a symbolic colon, like the references to "equivalent" and "similar" above, that "indicates that there are two or more sets of definitions at other [dictionary] entries which are substitutable in various contexts," and that when a cross reference follows "syn see," as does "like" above, the cross-referenced word also is synonymous with the entered word. *Id*. at 18(a) (notes 16.2, 16.2.1, 18.2).

From the foregoing sources, three inferences can be drawn. First, the word "comparable" has two primary senses. Using the first sense, that word could refer to a degree of similarity that makes comparison appropriate based on the commonality of salient features of the things being compared (meaning that they are alike in substance or essentials). Alternatively, using the second sense, the word could describe a very high degree of similarity (meaning virtually identical). Second, both senses of the word describe, at a minimum, a basis for comparison that is grounded in the closeness of the essential features of the things being compared. If the first meaning is adopted, as the Court of Appeals did, its more elastic "core" attribute-based lens could support the conclusion that the trial court reached. On the other hand, if the second meaning applies, it would invite the close element-matching approach for which defendant advocates. Third, the meaning of the word can be determined only within the context of its use.

With that preface, we proceed by stating the obvious: As used in ORS 137.719, "comparable" modifies "offense." "Offense" is defined in ORS 161.505 as "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state." An offense is either a crime, as described in ORS 161.515, or a violation, as described in ORS 153.008. ORS 161.515 provides that a "crime" is "an offense for which a sentence of imprisonment is authorized." ORS 161.525, in turn, provides that a crime is a "felony" when "it is so designated in any statute of this state or if a person convicted under a statute of this state may be sentenced to a maximum term of imprisonment of more than one year." Thus, because ORS 137.719

applies when a person previously "has been sentenced for sex crimes that are felonies at least two times," the reference in ORS 137.719(3)(b)(B) to "comparable offenses" is a reference to felony sex crimes that are comparable to those listed in ORS 163A.005.

In short, ORS 137.719 may be invoked only when a person previously has been sentenced for two or more comparable felony sex crimes. A person can have prior sentences only when there have been prior convictions. *See* ORS 137.010 (providing for duty of court to ascertain and impose punishment upon conviction for an offense). Accordingly, "comparable offenses," as used in ORS 137.719(3)(b)(B), refers to felony convictions on which a defendant previously has been sentenced for offenses that are comparable to those listed in ORS 163A.005.

The next question is, which primary sense of the word "comparable" did the legislature intend? The bare text of ORS 137.719(3)(b)(B) supports either primary alternative meaning in that, by failing to define the word, the legislature has not narrowed its meaning. Accordingly, we turn to statutory context, which includes other related statutes, particularly statutes that concern how a defendant's prior foreign convictions or sentences should be considered for purposes of sentencing on an Oregon conviction. *See* [State v. Klein](), 352 Or 302, 309, 283 P3d 350 (2012) (statutory context includes other related statutes); *see also* [State v. Ofodrinwa](), 353 Or 507, 512, 300 P3d 154 (2013) ("The context for interpreting a statute's text includes the preexisting *** statutory framework within which the law was enacted." (Internal quotation omitted.)).

The state makes a contextual argument based on the use by the legislature in several statutes and the Oregon Criminal Justice Commission in its sentencing guidelines of different words to identify qualifying convictions in four other conviction-counting schemes, and on the Court of Appeals' construction of one of those provisions. First, the state points to *former* OAR 253-04-011, promulgated by the Oregon Criminal Justice Commission in 1989, which provides that a foreign conviction may be considered in calculating an offender's criminal history score when "the elements

of the offense would have constituted a felony or Class A misdemeanor under current Oregon law." *Oregon Sentencing Guidelines Implementation Manual* 56 (1989).[6] The same text has remained in that rule ever since. *See* OAR-213-004-0011 (*former* OAR 253-04-011 renumbered in 1996). From the different words used in the rule, the state reasons that, "when the legislature chose to use * * * the word 'comparable' in ORS 137.719(3)(b)(B), it would have understood that to be a departure from the manner by which foreign convictions are considered for purposes of sentencing under the guidelines."[7]

Next, the state relies on ORS 137.712(6)(a)(B), which provides that a conviction in another jurisdiction is a qualifying conviction if it "would constitute a crime listed in subsection (4) of [ORS 137.712]," and ORS 163A.020(6)(a), which provides that the reporting requirements for sex offenders apply to a person convicted of a crime in another state that "would constitute a sex crime if committed in this state." According to the state, "[i]n light of the use of the word 'constitutes' in the Sentencing Guidelines, the legislature likely intended to require a close fit between a defendant's foreign conviction and their Oregon conviction when it enacted ORS 163A.020(6)(a) and ORS 137.712(6)(a)(B)."

Finally, the state notes that, in enacting ORS 137.719, the 2001 Legislative Assembly avoided using the term "statutory counterpart," a term that the 1999 Legislative Assembly had used in ORS 813.010. ORS 813.010(5)(a)(A)(ii) provides that driving under the influence of intoxicants is a Class C felony if the defendant has been convicted at least three times in the past 10 years of DUII in violation of ORS 813.010 or "the statutory counterpart to this section in another jurisdiction." The state observes that, in *State v. Ortiz*, 202 Or App 695, 124 P3d 611 (2005), the Court of

---

[6] The legislature expressly approved the guidelines in 1989. Or Laws 1989 ch 790, § 87; *see also State v. Davis*, 315 Or 484, 486-87, 847 P2d 834 (1993) (so stating).

[7] Lest there be any misunderstanding, the sentencing guidelines are not enactments of the legislature. Rather, those guidelines are administrative rules, of which the legislature has expressed approval, although without formally adopting them as statutes. *State v. Lane*, 357 Or 619, 624, 355 P3d 914 (2015); *State v. Langdon*, 330 Or 72, 74, 999 P2d 1127 (2000).

Appeals held that the defendant's conviction under an Idaho statute that applied only to drivers under the age of 21 and prohibited driving with a blood alcohol content (BAC) of less than 0.08 was not a conviction under a "statutory counterpart" to Oregon's DUII statute, ORS 813.010, which applied to all drivers, regardless of age, and prohibited driving with a BAC of 0.08 or higher. *Id.* at 701. The court in *Ortiz* emphasized that, although several other Oregon statutes criminalized driving while intoxicated, the phrase "statutory counterpart" referred to "this statute," that is, ORS 813.010; thus, the Idaho statute under which the defendant previously had been convicted had to be compared to ORS 813.010, not to other Oregon DUII statutes. *Id.* at 700.[8]

  The state reasons from the use of different terms in those schemes that the legislature must not have intended close element matching when it used the word "comparable" in ORS 137.719. Relying on the different words used in those statutes and the sentencing guidelines, the state asserts that, "when the legislature intends that a foreign conviction must have elements that 'match' an Oregon statute, it knows how to say so." Implicit in the contrast that the state seeks to draw is an acknowledgement that each of the cited conviction-counting statutes and rules requires close element matching. In addition, implicit in the state's assertion that the cited provisions provide context for interpreting ORS 137.719(3) is an acknowledgement that that statute also embodies a conviction-counting scheme. We agree that those and other pertinent provisions provide context for

---

[8] The legislature has used the term "statutory counterpart" in numerous other conviction-counting provisions. For example, ORS 137.690 imposes a mandatory minimum prison term of 25 years for a person convicted of a major felony sex crime when that person "has one (or more) previous conviction of a major felony sex crime," and it defines "previous conviction" as "a conviction for the statutory counterpart of a major felony sex crime in any jurisdiction." And, ORS 163.095(1)(c) defines the offense of aggravated murder as murder accompanied by the circumstance that the defendant "committed murder after having been convicted previously in any jurisdiction of any homicide, the elements of which constitute the crime of murder as defined in ORS 163.115 or manslaughter in the first degree as defined in ORS 163.118." In addition, ORS 163.701(1)(b) defines the offense of invasion of personal privacy in the first degree as invasion of personal privacy in the second degree accompanied by the circumstance that the defendant has a prior conviction for "[i]nvasion of personal privacy in any degree, public indecency, private indecency or a sex crime as defined in ORS 163A.005," or "[t]he statutory counterpart of" one of those listed offenses in another jurisdiction.

our construction of ORS 137.719(3), but we draw a different inference from the one that the state urges.

The examples on which the state relies show that, when the legislature and the Criminal Justice Commission intend to create a conviction-counting scheme that requires close element matching, they use a variety of words. However, each of the terms that are used in the cited examples—"statutory counterpart," "would constitute," and "the elements" would "constitute"—are consistent in meaning with the more restrictive primary meaning of "comparable." In addition to the terms used in the cited provisions, the legislature has used yet another term to describe qualifying foreign convictions in conviction-counting schemes. That term—"equivalent"—is yet another synonym of the more restrictive primary meaning of "comparable." For example, ORS 167.320, ORS 167.325, and ORS 167.330, all relating to animal abuse and neglect, provide an enhanced penalty if the offender has a previous conviction under ORS 167.320, ORS 167.322, ORS 167.325, or ORS 167.330, "or the equivalent laws of another jurisdiction." As another example, ORS 163.187, proscribing strangulation, provides an enhanced penalty if the person has been previously convicted of violating ORS 163.187, ORS 163.160, ORS 163.165, ORS 163.175, ORS 163.185, or ORS 163.190, "or of committing an equivalent crime in another jurisdiction." In addition, ORS 163.160 provides an enhanced penalty for fourth-degree assault based on certain facts, including a previous conviction for "an equivalent crime in another jurisdiction."

As further context, it is notable that the assault statutes use "equivalent crime in another jurisdiction" and "statutory counterpart in any jurisdiction" interchangeably. That is, ORS 163.160(2)(b) and (c) provide an enhanced penalty for assault in the fourth degree based in part on a foreign conviction for an "equivalent crime," while ORS 163.185(1)(d)(A) and (B)(i) define assault in the first degree based in part on foreign convictions for a "statutory counterpart" to ORS 813.010 or for "statutory counterparts" to listed Oregon offenses.

Those examples reveal a consistent pattern. Where the purpose of considering a prior conviction is to identify

and then "count" specific criminal history, generally speaking, the legislature (both directly and by approving the Sentencing Guidelines) has required that the historical offense be the same as or nearly the same as a qualifying Oregon offense. The state has identified no plausible explanation for the legislature to have purposefully devised a less stringent conviction-counting test for ORS 137.719 than for the determination of a defendant's criminal history under the Sentencing Guidelines or for the purpose of qualifying a prior conviction under any of the recidivist statutes that the parties and we have identified. To the contrary, conspicuously absent from any of those examples is a provision in which an offender's criminal history or recidivism is expressly determined under the less restrictive meaning of shared "core characteristics" that the state advances here.

And that circumstance only makes sense. It is the prerogative of the Oregon legislature to determine what factual elements will give rise to criminal responsibility under Oregon law. When another state adopts a different legislative policy, no matter how defensible or similar to what the Oregon legislature might (or might not) have adopted if it had specifically considered the matter—that state has made its own public policy judgment. Unless a less restrictive meaning is evident from the text and context of an Oregon conviction-counting statute, there is no reason to presume that the Oregon legislature intended to adopt another state's policy by reference, without the attendant deliberative safeguards that Oregon's own legislative processes prescribe.

In sum, we conclude that the state's interpretation of "comparable offenses" is not supported by the context of ORS 137.719. Instead, the frequent use in conviction-counting provisions of terms that are consistent in meaning with the more restrictive primary meaning of "comparable" suggests that the legislature likely intended for the term "comparable" in ORS 137.719(3)(b)(B) to require close element matching.

The sparse legislative history of ORS 137.719 neither confirms, nor is it inconsistent with, that tentative conclusion. The few references to ORS 137.719 in the legislative history of Senate Bill (SB) 370 (2001) are best understood

as reflecting the legislature's general intent that recidivist sex offenders receive the second-most serious penalty that Oregon law provides: A sentence of life without the possibility of parole. *See, e.g.*, Tape Recording, Senate Committee on Judiciary, SB 370, May 10, 2001, Tape 132, Side B (statement of committee counsel Craig Prins) (stating that the amendment "establishes [the] presumptive sentence of life imprisonment for a third conviction for a felony sex crime"). That general intent, though, does not tell us what crimes qualify as repeat offenses. As we recently explained in *Wyers v. American Medical Response Northwest, Inc.*, 360 Or 211, 227, 377 P3d 570 (2016), "drawing conclusions from silence in legislative history misapprehends the nature of legislative history itself, which often is designed not to explain to future courts the intended meaning of a statute, but rather to persuade legislative colleagues to vote in a particular way." Thus, silence in the legislative history of ORS 137.719 does not inform our inquiry.

In sum, the text of ORS 137.719(3) supports (as one of two alternative primary meanings) the conclusion that a "comparable offense" under ORS 13.719(3)(b)(B) must closely match the elements of an Oregon felony sex crime, and the context of that statute indicates that that more restrictive primary meaning is the one that the legislature likely intended. Accordingly, we conclude that the term "comparable offenses" in that statute refers to offenses with elements that are the same as or nearly the same as the elements of an Oregon felony sex crime, not to offenses that merely share a core similarity with such an offense.

## APPLICATION

The California statute under which defendant previously was sentenced, Cal Penal Code § 288, provides in pertinent part:

"(a) Except as provided in subdivision (i), any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child,

is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

For purposes of comparison under ORS 137.719(3)(b)(B), the state primarily relies on ORS 163.427(1)(a)(A), the offense for which defendant was convicted in this case. Under that statute, a person commits first-degree sexual abuse when he or she subjects a person under 14 years old to "sexual contact." "Sexual contact," in turn, is defined by ORS 163.305(6) as "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purposes of arousing or gratifying the sexual desire of either party."

This court has interpreted the term "intimate parts" in ORS 163.305(6) to mean "more than 'sexual parts,' but in context [that term refers] to parts that evoke the offensiveness of unwanted sexual intimacy, not offensive touch generally." *State v. Woodley*, 306 Or 458, 461, 760 P2d 884 (l988). Cal Penal Code § 288, by contrast, does not require proof of touching of a sexual or intimate part of the victim's body, but instead refers to "any part."

After examining the elements of ORS 163.427(1)(a)(A) and Cal Penal Code § 288(a), we conclude that the offenses are not "comparable." The Oregon offense has three conduct elements: first, an offender must touch a child; second, the touch must be of a part of the body that is sexual or that is regarded as intimate by the child and that the offender knew or should have known was regarded as intimate; and third, the touch must be made with a sexual intent. In contrast, the California offense has only two conduct elements and may be proved by any touching of a child, even outwardly innocent touching, if the touch is sexually motivated. *See Martinez*, 11 Cal 4th at 442 (holding that "section 288 is violated by 'any touching' of an underage child committed with the intent to sexually arouse either the defendant or the child"). That means that the California offense could be committed simply by placing an arm around a child's shoulder, patting the top of a child's head, or helping a child put on a pair of shoes, if the physical contact—though experienced by the child as innocent—is made with a sexual purpose.

In short, although Cal Penal Code § 288(a) proscribes sexually motivated conduct, it prohibits conduct simply by proscribing the intent with which the conduct is undertaken. ORS 163.427(1)(a)(A) is significantly narrower. It also prohibits sexually motivated conduct, but it proscribes only a limited category of sexually motivated conduct. Thus, the elements of Cal Penal Code § 288(a) do not closely match the elements of ORS 163.427(1)(a)(A). Accordingly, the offenses are not comparable for purposes of ORS 137.719(3)(b)(B).

That conclusion does not end our inquiry, though. Although this court will not, in the first instance, engage in a free-ranging search for Oregon offenses that could be comparable to defendant's California offenses, the state also has asserted in the Court of Appeals and before this court that defendant's California offenses were comparable to the Oregon offense of attempted sexual abuse in the first degree. *See* ORS 163A.005(5)(x) (providing that a "sex crime" includes "[a]ny attempt to commit any of the crimes listed in paragraphs (a) to (w) of this subsection"). Assuming that that argument is not foreclosed because the state failed to raise it before the trial court, we reject it on its merits.

Under ORS 161.405(1), "[a] person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." To constitute a "substantial step" toward the commission of a crime, an act must be strongly corroborative of the actor's criminal purpose; that is, the actor's conduct must (1) advance the criminal purpose charged; and (2) provide verification of the existence of that purpose. *State v. Walters*, 311 Or 80, 85, 804 P2d 1164, *cert den*, 501 US 1209 (1991). Mere preparation will not suffice. *Id.* Under that standard, an attempt to commit sexual abuse in the first degree must be established by conduct that is corroborative of the actor's criminal purpose.

It follows that, for purposes of an attempt to commit first-degree sexual abuse under ORS 163.427(1)(a)(A), the defendant's conduct must corroborate an intent to have sexual contact with a child by touching a sexual or intimate part. That element need not be proved under Cal

Penal Code § 288(a), because a person could commit that offense without intending to have "sexual contact" with the child, as "sexual contact" is defined under Oregon law. That is, the person could satisfy a sexual motivation for physical contact by engaging solely in contact that is not "sexual contact" under Oregon law. Although that contact might violate Cal Penal Code § 288(a), it would not violate ORS 163.427(1)(a)(A), nor be a step—let alone a substantial step—toward a violation of ORS 163.427(1)(a)(A). Accordingly, Cal Penal Code § 288(a) is not comparable to the offense of attempted sexual abuse in the first degree.

Because defendant's California convictions were not comparable to a qualifying Oregon offense under ORS 137.719(3)(b)(B), we must conclude that the trial court erred in imposing the presumptive life sentence prescribed by that statute. Of course, that conclusion will not shield defendant on remand from severe criminal punishment for his current crimes of conviction. We also emphasize the limits of our holding in this case. Among other things, we need not decide here the extent to which differences in the wording of elements of a foreign offense would preclude it from being comparable to a similar Oregon offense.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed in part and affirmed in part, and the case is remanded to the circuit court for further proceedings.