ORTEGA, P. J.
*21 Defendant appeals a judgment of conviction for violating ORS 164.805(1)(a), which prohibits offensive littering by "creat[ing] an objectionable stench" by intentionally "[d]iscarding or depositing any rubbish, trash, garbage, debris or other refuse upon *** any public way." He contends that the trial court erred when it denied his motion for a judgment of acquittal in which he argued that ORS 164.805(1)(a) does not encompass his conduct, public urination. The question presented is an issue of statutory interpretation, and we therefore review for legal error by employing the methodology set out in PGE v. Bureau of Labor and Industries , 317 Or. 606, 611, 859 P.2d 1143 (1993), and State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). Because we agree with defendant that ORS 164.805(1)(a) does not prohibit public urination, we reverse.[1]
The facts relevant to this appeal are not in dispute. Defendant was on a cross-country road trip and, coming from California, stopped in downtown Portland late in the day. By the time he got to Portland and parked, it was already an "emergency" for him to use a restroom. He attempted to use a gas station restroom, but was informed that it was not available to the public. He then tried a Subway restaurant, but that restroom was available only to paying customers and the line for sandwiches was long. He began to panic because of the intense pressure of having to urinate. He found a spot that he believed was secluded and urinated on the side of a building.
Sam, employed by a private security company engaged by local businesses to help enforce city ordinances and assist with nonemergency situations, saw defendant urinate and observed the urine flowing across the sidewalk toward the street. Sam knew it was urine because of the stench. Sam approached defendant, and defendant responded, "I couldn't find a better spot." Sam then radioed a police officer, who arrived shortly thereafter and issued defendant a citation for misdemeanor offensive littering, a *22 Class C *171 misdemeanor, ORS 164.805(1). That statute provides, as relevant here:
"A person commits the crime of offensive littering if the person creates an objectionable stench or degrades the beauty or appearance of property or detracts from the natural cleanliness or safety of property by intentionally:
"(a) Discarding or depositing any rubbish, trash, garbage, debris or other refuse upon the land of another without permission of the owner, or upon any public way or in or upon any public transportation facility[.]"[2]
(Emphasis added.)
At trial, defendant moved for a judgment of acquittal, asserting that the statute did not encompass his conduct. The trial court denied the motion on the basis that the terms of the offensive littering statute were broad enough to include human urine, and the jury found him guilty. This appeal ensued. Defendant reprises his argument that the statute was never intended to prohibit urinating on a public street, mainly asserting that the dictionary definitions of the terms "rubbish, trash, garbage, debris or other refuse" indicate their plain meaning. In his view, those plain meanings do not cover his conduct. Moreover, among other arguments, he contends that the act of urinating does not constitute either "discarding" or "depositing." The state, also looking to the dictionary definitions, argues that the terms can be read to cover defendant's conduct.
As noted, the question presented poses the task of statutory interpretation. We thus use the PGE / Gaines *23 methodology that requires us to examine the text of ORS 164.805(1)(a) in context, along with any relevant legislative history or other aids to construction. Gaines , 346 Or. at 171-72, 206 P.3d 1042. But before turning to that task, we pause to make a point about the use of dictionary definitions.
When a case involves terms that are not statutorily defined, we typically resort to dictionary definitions to discern their meaning. Further, as a general rule, we give "words of common usage" their "plain, natural, and ordinary meaning," PGE , 317 Or. at 611, 859 P.2d 1143, and the "ordinary meaning of a word is presumed to be what is reflected in a dictionary."[3] State v. Shifflett , 285 Or. App. 654, 661, 398 P.3d 383 (2017) (citing Jenkins v. Board of Parole , 356 Or. 186, 194, 335 P.3d 828 (2014) ). Bear in mind, however, that when we construe statutes, "we do not simply consult dictionaries and interpret words in a vacuum." State v. Cloutier , 351 Or. 68, 96, 261 P.3d 1234 (2011). Put differently, "dictionary definitions are guides for discernment, not blunt instruments." State v. Carlton , 361 Or. 29, 36, 388 P.3d 1093 (2017). That is because dictionaries "do not tell us what words mean, only what words can mean, depending on their context and the particular manner in which they are used." Cloutier , 351 Or. at 96, 261 P.3d 1234 (emphasis in original); see also *172 State v. Fries , 344 Or. 541, 546, 185 P.3d 453 (2008) (context determines which of multiple definitions is the one the legislature intended). Thus, "[w]hen the dispute 'centers on the meaning of a particular word or words, a dictionary definition-although providing some evidence of meaning-should not be relied on to resolve a dispute about plain meaning without critically examining how the definition fits into the context of the statute itself.' " Shifflett , 285 Or. App. at 661, 398 P.3d 383 (quoting State v. Gonzalez-Valenzuela , 358 Or. 451, 461, 365 P.3d 116 (2015) ). *24 Here, we frame the relevant question as whether public urination-defendant's conduct in creating an objectionable stench as a result of urinating on a public sidewalk-is proscribed by the statute, not merely whether urine falls under the terms "rubbish, trash, garbage, debris or other refuse." The framing matters because, under ORS 164.805(1)(a), in addition to the requirement that the thing that creates an objectionable stench must be "rubbish, trash, garbage, debris or other refuse," the defendant must also "discard" or "deposit" the thing. As we explain, those terms have particular meanings that limit the conduct contemplated by the offensive littering statute and also inform the meaning of "rubbish, trash, garbage, debris or other refuse." Although we focus this part of the discussion on the meaning of "discarding or depositing," we are mindful that those words must be considered in relation to things that must be discarded or deposited to run afoul of ORS 164.805 (1)(a) -"rubbish, trash, garbage, debris or other refuse." And, when considered in that broader context, we are not persuaded that the legislature intended public urination to constitute the crime of offensive littering.
"Discard" means "to drop, dismiss, let go, or get rid of as no longer useful, valuable, or pleasurable ." Webster's Third New Int'l Dictionary 644 (unabridged ed. 2002) (emphasis added). The act of urination, however, is a bodily function in which urine is eliminated; it does not function to get rid of something that is "no longer useful, valuable, or pleasurable." That is, urine is not something formerly useful that one chooses to get rid of. Rather, one discharges urine, rather than discarding it. See id. at 2522 (defining "urinate" as to "discharge urine"). Hence, the ordinary meaning of "discarding" does not include the act of urinating.
If the act of urinating is not an act of "discarding," then is it an act of "depositing"? The definition for "deposit" has multiple senses,[4] and, because the state characterizes urinating as a "natural process," it posits that the best sense of "deposit" is the one that means "to lay down or let *25 fall or drop by a natural process." Id. at 605. That sense of the word, however, is ill-suited to the act of urination and not the way we would expect the legislature to describe that act.[5] The illustrations for that sense of the word are: "the intervening seasons had deposited a thick layer of refuse over the vacant lot"; "the wind deposited a film of dust over the furniture"; and "in ... hogs fed on copra ... the cocoanut oil globules had been deposited by nature in the tissues-V. G. Heiser." (Emphases in original.) Id . Those illustrations suggest a natural process that is often gradual and not a result of an individual's personal act, very unlike the process of urination. Again, we doubt that the legislature would have understood terms more commonly associated with littering to capture the act of public urination.
The dissent looks to the definitional sense in which "deposit" means "to set down or place esp[ecially] carefully or safely or in care or custody." Id . Recognizing, as do we, that that meaning does not "comfortably fit a statute that criminalizes the act of littering," the dissent suggests that that sense is better construed without an emphasis on care and safety. 294 Or. App. at 34-35 (Hadlock, J., dissenting). That sense and construction of it-to set down or place-comes closest to *173 describing the act of littering as used in the statute. However, the " 'best sense is the one that most aptly fits the context of an actual genuine utterance .' " Carlton , 361 Or. at 36, 388 P.3d 1093 (quoting Webster's at 17a (note 12.4) (emphasis added) ). Viewing our task in that light, even though in an abstract sense a person "sets down or places" urine when urinating, we are hard-pressed to see that the word "deposit" fairly encompasses the act of urination when used in ordinary conversation or other settings. In any event, we need not decide whether the ordinary meaning of "deposit" could be read to include urination because, as we explain below, the immediate product of defendant's conduct that created the offensive stench-urine-does not fit within any of the terms that are included in ORS 164.805(a) as litter-"rubbish, trash, garbage, debris or other refuse." *26 We thus turn to the relevant dictionary definitions for "rubbish, trash, garbage, debris or other refuse," but we first observe that the dictionary used here, Webster's Third New Int'l Dictionary , has a synonymy for each of those words, which provides a helpful guidepost to discern their ordinary meaning.[6] Webster's at 1910. A "synonymy" is "a list or collection of synonyms or words of similar meaning often defined and discriminated from each other." Webster's at 2321. That is, the dictionary
"contains over a thousand paragraphs in which synonymous words are briefly discriminated and given verbal illustrations. Each paragraph follows the entry of one of the words of a group under consideration and is signaled by the boldface abbreviation syn indented. The paragraph is a synonymy."
*27 Webster's at 18a (note 18.1). We understand that including together the words "rubbish," "trash," "garbage," "debris," and "refuse" in the synonymy means that the dictionary's lexicographers decided it necessary, or helpful, to provide an explanation for a group of words that are similar in meaning yet different enough to require careful distinguishing because they lack a complete equivalency.
Understood in that way, the legislature's inclusion of those same words-"rubbish, trash, garbage, debris or other refuse"-in ORS 164.805(1)(a) suggests two things: (1) that those words have a particular definitional relationship to each other that is indicated in the synonymy, and (2) that the legislature intentionally selected each word because, although they are related in meaning, their meaning varies enough to make it necessary to include all of them to encompass the conduct which the legislature intended to proscribe.
*174 That understanding leads us to consider separately each word in the phrase "rubbish, trash, garbage, debris or other refuse" to discern whether urine as a result of public urination fits within those words' ordinary meaning.
We turn to the meaning of "rubbish," which is relevantly defined as "miscellaneous useless valueless waste or rejected matter : TRASH, DEBRIS." Webster's at 1983. Under that definition, rubbish is either "miscellaneous useless valueless waste" or "rejected matter." But urine does not fit naturally under either alternative meaning. Under the first part, rubbish is "miscellaneous useless valueless waste." "Miscellaneous" is defined as "comprising members or items of different kinds : grouped together without system." Id. at 1442. That is, if rubbish involves "miscellaneous useless valueless waste," it describes an assorted collection of items-not one thing, like urine. As to the second part of the definition, because the human body eliminates urine from the body as a necessity, urine is not something that is rejected. That reading of rubbish is consonant with the explanation provided in the aforementioned synonymy, which explains that "RUBBISH now is likely to indicate a heterogeneous accumulation of worn-out, used up, broken, rejected, or worthless materials or things." Id. at 1910. Urine is indeed "valueless waste" or "worthless material," but it is *28 not a material that is commonly described as having been rejected because it is no longer useful.
As for the remaining words, "trash" is relevantly defined as "something worth relatively little or nothing * * * JUNK, RUBBISH." Id. at 2432. The synonymy describes that the meaning of trash "in general use has about the same suggestion as RUBBISH; it may refer to a somewhat lighter welter of discarded material and may be less likely to suggest separate objects and more likely to suggest a crumpled mass < cleaning the old newspapers, rags, tin cans and other trash out of the cellar." Id . at 1910. "Debris" is relevantly defined as "the remains of something broken down or destroyed" and further explained in the synonymy as "likely to indicate broken fragments of bricks, rocks, walls, or buildings < cleaning up the debris after the fire> < the debris left after mining operations>." Id. at 582, 1910. "Garbage" means "refuse resulting from the preparation, cooking, and dispensing of food : SCRAPS < scrape the plates and take out the garbage>" and it is further explained that the word "now usu[ally] indicates animal or vegetable refuse from the processes of shipping, preparing, and serving food < egg shells, orange peels, coffee grounds and the rest of the garbage after breakfast>." Id . at 935, 1910. As noted, our task is to discern the ordinary meaning of common words given the context and the particular manner they are used in a statute, and urine does not fit within any of the preceding descriptions.[7]
With that said, the state emphasizes "refuse" as the word in ORS 164.805(1)(a) that best describes urine. The word "refuse," considered alone, means "the worthless or useless part of something : LEAVINGS, DREGS, DROSS" or is synonymous with "RUBBISH, TRASH, GARBAGE." Id . at 1910. The synonymy supplies an explanation that *29 "refuse applies to any matter or materials rejected as useless and fit only to be thrown out or away < there was a huge stinking heap of week-old refuse ... old clothes, sad boots with calloused heels, and hats that were just misshapen basins of felt; old books and magazines, stained with tea leaves and the sodden heterogeneous mass of household garbage -Ruth Park>." Id . About that relevant definition, we first observe two things. First, refuse is the "worthless or useless part of something ." The elimination of urine from someone is not easily described by that definition. Second, although refuse applies to "any matter or materials," that matter or materials is something that is "rejected as useless and fit only to be thrown out or *175 away." Again, as we noted earlier, urinating is not commonly understood as an act of rejecting something as useless.
"[R]efuse," however, is not an isolated word in the statute. Rather, the series of things proscribed is "rubbish, trash, garbage, debris or other refuse," and "or other refuse" is the final, nonspecific part of that phrase. "In construing the text of a statute in context, one of the relevant maxims is 'ejusdem generis ,' which indicates that, when a nonspecific phrase follows a list of items, the nonspecific phrase refers to 'other items of the same kind.' " State v. Essex , 215 Or. App. 527, 530, 170 P.3d 1094 (2007) (quoting Vannatta v. Keisling , 324 Or. 514, 533, 931 P.2d 770 (1997) ). That is, we ordinarily assume that a nonspecific term in a series " 'shares the same qualities as the specific terms that precede it.' " State v. James , 266 Or. App. 660, 668, 338 P.3d 782 (2014) (quoting ZRZ Realty Co. v. Beneficial Fire and Casualty Ins. , 349 Or. 117, 140-41, 241 P.3d 710 (2010), adh'd to as modified on recons , 349 Or. 657, 249 P.3d 111 (2011) ). In this context, including the phrase "or other refuse" suggests that the terms preceding it are a kind of refuse and that the legislature wanted to provide a term in the series that encompasses material or matter that the preceding terms may not describe. However, the maxim of ejusdem generis instructs that the phrase-"or other refuse"-may not be construed so broadly that it ceases to share the same qualities as the preceding terms-"rubbish, trash, garbage, [and] debris." The common characteristic of those terms is captured by the ordinary meaning of refuse: the part of something or matter *30 or materials rejected as useless. That common characteristic does not include urine.[8]
As for the context of ORS 164.805(a), there are a few things worth mentioning. Paragraph (b) of the offensive-littering statute prohibits "[d]raining, or causing or permitting to be drained, sewage or the drainage from a cesspool, septic tank, recreational or camping vehicle waste holding tank or other contaminated source, upon the land of another without permission of the owner, or upon any public way." Although we agree with the dissent that "causing or permitting to be drained" sewage or human waste separates that conduct from the conduct that the dissent concludes is prohibited by paragraph (a), that paragraph (b) also prohibits "draining" means that there is overlap between the two paragraphs under the dissent's interpretation of paragraph (a). That is, if any act of getting rid of urine or, by implication, other excrement, is prohibited under paragraph (a), then that paragraph would already prohibit the draining of human waste and render paragraph (b) largely superfluous. Further, both paragraphs are punished as Class C misdemeanors, which would lead to the strange result that, under the dissent's conclusion, a single act of public urination carries the same penalty as the unlawful disposal of a waste reservoir.
In sum, when each relevant word in ORS 164.805 (1)(a) is properly considered in the context and the particular manner it is used, the ordinary meaning of those words do not proscribe defendant's conduct. Urine-the immediate product of defendant's conduct-does not fit within any of the ordinary meanings of the terms "rubbish, trash, garbage, debris or other refuse." Consequently, the trial court *31 erred in denying defendant's motion for judgment of acquittal, and we therefore reverse defendant's conviction.
Reversed.

Given our disposition of defendant's claim of error as to the motion for the judgment of acquittal, we need not reach his remaining assignments.

Offensive littering under ORS 164.805(1) can be committed in two other ways:
"(b) Draining, or causing or permitting to be drained, sewage or the drainage from a cesspool, septic tank, recreational or camping vehicle waste holding tank or other contaminated source, upon the land of another without permission of the owner, or upon any public way; or
"(c) Permitting any rubbish, trash, garbage, debris or other refuse to be thrown from a vehicle that the person is operating. This subsection does not apply to a person operating a vehicle transporting passengers for hire subject to regulation by the Department of Transportation or a person operating a school bus described under ORS 801.460."
A public way "includes, but is not limited to, roads, streets, alleys, lanes, trails, beaches, parks and all recreational facilities operated by the state, a county or a local municipality for use by the general public." ORS 164.805(2)(b).

When the legislature has not otherwise defined a term or used a term of art, our method of statutory interpretation ordinarily proceeds to give "words of common usage" their "plain, natural, and ordinary meaning." Such meanings are likely the ones intended by the legislature, and their use is concomitant with its obligation to provide fair warning of what the law prohibits. That is, because "the ordinary citizen must be presumed to know and understand the general parameters of *** [terms]" in a statute, State v. Illig-Renn , 341 Or. 228, 241-42, 142 P.3d 62 (2006), it is imperative that, absent clear indication to the contrary by the legislature, we determine the meaning of those terms within the confines of their ordinary meaning, so that anyone can reasonably understand what conduct our statutes criminalize.

The Supreme Court explained in Carlton that definitions in Webster's include separate senses and subsenses (separated by boldface arabic numerals and boldface lowercase letters, respectively) when a definition has more than one sense. 361 Or. at 36-37, 388 P.3d 1093.

There are, of course, many common descriptions in the English language for urine and the act of urinating, none of which the legislature included in ORS 164.805(1)(a).

The synonymy under the dictionary definition for "refuse" states:
"syn WASTE, RUBBISH, TRASH, DEBRIS, GARBAGE, OFFAL: REFUSE applies to any matter or materials rejected as useless and fit only to be thrown out or away < there was a huge stinking heap of week-old refuse ... old clothes, sad boots with calloused heels, and hats that were just misshapen basins of felt; old books and magazines, stained with tea leaves and the sodden heterogeneous mass of household garbage -Ruth Park> WASTE is also comprehensive; it may indicate that unused or rejected in one operation but possible for use in another capacity or under different circumstances < mechanics using cotton waste to clean their hands> < waste in lumbering, the parts of trees that could be used but are not> < barnyard wastes> < tea waste -slack bushes, waste leaf, and crushed sugarcane leaf and pulp -Eve Langley> RUBBISH now is likely to indicate a heterogeneous accumulation of worn-out, used-up, broken, rejected, or worthless materials or things < rubbish . This material includes the household and business wastes that are not classified as garbage or ashes. It includes paper, rags, excelsior and other packing, wood, glass, crockery, and metals -V. M. Ehlers & E. W. Steel> TRASH in general use has about the same suggestion as RUBBISH; it may refer to a somewhat lighter welter of discarded material and may be less likely to suggest separate objects and more likely to suggest a crumpled mass < cleaning the old newspapers, rags, tin cans and other trash out of the cellar> DEBRIS is likely to indicate broken fragments of bricks, rocks, walls, or buildings < cleaning up the debris after the fire> < the debris left after mining operations> GARBAGE now usu. indicates animal or vegetable refuse from the processes of shipping, preparing, and serving food < egg shells, orange peels, coffee grounds and the rest of the garbage after breakfast> OFFAL may refer to anything cut off or allowed to fall off in processing (as animal entrails or feet or fish heads or chicken heads); it may suggest the offensive but does not always do so, since such meat offal as hearts and livers may be sought for eating < 'Offal!' she gasped. 'Take that carrion out' -Kenneth Roberts>."
Webster's at 1910.

The dissent states that the use of the word "any" is generally recognized to be broadly inclusive and that we must therefore consider the relevant dictionary terms in their broadest sense. 294 Or. App. at 32-33 (Hadlock, J., dissenting). Be that as it may, each word following "any" has a particular, ordinary meaning given its context, and although the range of things that fit within that meaning should be considered comprehensively, that consideration should not be so expansive that it exceeds each word's ordinary and specific meaning.

Our conclusion is consistent with our holding in Essex . There, we held that the words "similar refuse" in subsection (2) of ORS 164.775, which makes it "unlawful for any person to discard any glass, cans or other similar refuse in any waters of the state, as [statutorily defined]," included fishing line and tackle discarded into the Columbia River. 215 Or. App. at 531, 170 P.3d 1094. In doing so, we rejected the defendant's arguments that fishing line and tackle did not share similar characteristics as glass or cans by using the definition of "refuse" that we use here and concluded that the fishing line and tackle came within that definition because, in the defendant's case, he had discarded or rejected items that ceased to have value when confronted by the police. Id . at 532, 170 P.3d 1094.