Argued and submitted November 25, 2015; convictions on Counts 2 and 3 for telephonic harassment reversed, otherwise affirmed May 24, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JASON DARRELL SHIFFLETT,
*Defendant-Appellant.*

Marion County Circuit Court
13C43131; A156899

398 P3d 383

Meredith Allen, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Hadlock, Chief Judge, and Lagesen, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

## ORTEGA, P. J.

Defendant challenges his convictions for telephonic harassment under ORS 166.090(1)(b), which provides that a telephone caller commits the crime of telephonic harassment if the caller intentionally harasses or annoys another person: "By causing such other person's telephone to ring, knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone[.]" Defendant argues that, because there was no evidence that his unauthorized phone calls to the victim's telephone caused that phone to emit an audible sound, the trial court should have granted his motion for judgment of acquittal. The state counters that the legislature did not intend to require an audible sound, but rather intended to protect a person's property interest in his or her telephone from trespass by a person making calls to that telephone after having been told not to do so. Accordingly, the state argues that the trial court correctly concluded that the statute can be violated by a person making an unauthorized call regardless of whether it causes the receiving party's telephone to emit an audible sound. We conclude that the statutory text does not support the trial court's conclusion that it is the act of making an unauthorized call that violates the statute. Rather, the plain and unambiguous text of ORS 166.090(1)(b) requires the other person's telephone "to ring," which we interpret to mean that the telephone must emit an audible sound. Accordingly, we reverse defendant's convictions for telephonic harassment.

We review the denial of a motion for judgment of acquittal to determine whether, after viewing the facts and all reasonable inferences that may be drawn from those facts in the light most favorable to the state, "'a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.'" *State v. Koenig*, 238 Or App 297, 301, 242 P3d 649 (2010), *rev den*, 349 Or 601 (2011) (quoting *State v. Schneider*, 229 Or App 199, 201, 211 P3d 306 (2009)). However, when the dispute "'centers on the meaning of the statute defining the offense, the issue is one of statutory construction,'" which we review for legal error. *State v. Hunt*, 270 Or App 206, 210, 346 P3d 1285 (2015) (quoting *State v. Wray*, 243 Or App 503, 506, 259 P3d

972 (2011)). We state the relevant facts consistently with that standard.

On June 7, 2013, defendant began calling and sending text messages to the victim. Given the tone of some of those calls and messages, the victim contacted the police. The next morning, the victim answered a call from defendant and told him not to call her anymore. Later that morning, the victim discovered two voicemail messages from defendant that had come through after she had instructed him to stop calling her.

Defendant was charged by information with one count of harassment (Count 1), ORS 166.065,[1] and two counts of telephonic harassment (Counts 2 and 3), ORS 166.090(1)(b). The telephonic harassment counts were based on the allegation that defendant, "on or about June 8, 2013, *** did unlawfully and intentionally harass and annoy [the victim] by causing the telephone of [the victim] to ring, knowing that said defendant had been forbidden from so doing by [the victim.]"[2] At trial, the state proceeded on the theory that, after the victim told defendant not to call her on the morning of July 8, defendant violated ORS 166.090(1)(b) by calling the victim's phone and leaving two voicemails. That is, the state's case was based on evidence of the two voicemails left by defendant, not any other call or message. At the close of the state's case, defendant moved for a judgment of acquittal, arguing:

"Your honor, it's required that my client caused [the victim's] telephone to ring, and the State has to prove it beyond a reasonable doubt. I heard absolutely no evidence

---

[1] Count 1 was based on the allegation that defendant, during one of the calls or messages on June 7, 2013, threatened to inflict serious physical injury to the victim. The jury acquitted defendant of that count and it is not at issue on appeal.

[2] ORS 166.090(1) also provides that a person commits the crime of telephonic harassment if the caller "intentionally harasses or annoys another person:

"*****

"(c) By sending to, or leaving at, the other person's telephone a text message, voice mail or any other message, knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone."

The state did not charge defendant with telephonic harassment under paragraph (c) for leaving a "voice mail or any other message."

to the best of my recollection of a telephone ringing from anyone. I think for that reason alone [defendant] is entitled to a Judgment of Acquittal at this time. It's part of the statute Your Honor. We simply did not hear any evidence of a telephone ringing."

The court denied defendant's motion, concluding: "I don't think it has to be a traditional ring tone to count as a ring for purposes of the statute. Causing the phone call to be initiated or triggered on the phone I think is the meaning of ring as used here." A jury acquitted defendant of harassment, but found him guilty of the two counts of telephonic harassment.

Defendant appeals, arguing that, to violate ORS 166.090(1)(b), he had to have caused the victim's telephone to emit an audible sound (*i.e.*, "ring") after the victim told him not to call her anymore. He asserts that there was no evidence that he did so, and thus, the court should have granted his motion for judgment of acquittal. He posits that the applicable legislative history of the statute demonstrates that ORS 166.090 was drafted in a manner that was intended to avoid the constitutional problems that prior versions of the telephone harassment statute had encountered,[3] but "nothing in the context or legislative history suggests that the legislature intended for the phrase 'to cause a telephone to ring' [to mean] anything other than to cause a telephone to make an audible sound."

The state counters that requiring an "audible sound" would frustrate the legislature's intent in ORS 166.090(1)(b) to protect a person's property interest in the person's telephone from trespass by a person making calls to that telephone after having been told not to do so. In making that argument, the state acknowledges that the plain meaning of "ring" implies that the "telephone must make an audible sound." Nevertheless, the state relies on legislative

---

[3] *See State v. Blair*, 287 Or 519, 524-25, 601 P2d 766 (1979) (declaring ORS 166.065(1)(c) (1979), to be constitutionally inadequate because it did not require an 'effect' on the listener and the prohibited conduct was not narrowly defined); *State v. Ray*, 302 Or 595, 600-01, 733 P2d 28 (1987) (holding that ORS 166.065(1)(e) (1985) was unconstitutional because it potentially reached areas of communication that would be constitutionally privileged, and it incorporated a definition of obscenity that was unconstitutionally vague).

history that shows that the statute was enacted with a "basis" in trespass—*i.e.*, "[t]he conduct being proscribed is the unauthorized use of another's property—the telephone." Based on that legislative history, the state proffers that the legislature intended to proscribe a person's unauthorized *call* to the telephone of another, and violation of the statute was not intended to turn on whether the other person's telephone emitted an audible sound. The state maintains that an "unauthorized call is no less a trespass because it is carried out in silence instead of announcing itself with a ring: a person's telephone has still been used without their permission, and that is precisely the conduct the legislature sought to proscribe by enacting ORS 166.090(1)(b)."

Alternatively, apparently as an alternative basis for affirmance, the state argues that, even if we agree with defendant's interpretation of the statute, we should affirm defendant's convictions because there is sufficient evidence to allow a reasonable factfinder to find that defendant caused the victim's phone to make an audible sound. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining when an appellate court can affirm the lower court's ruling under the "right for the wrong reason" doctrine).

We briefly address and dispose of the state's alternative basis for affirmance. Under *Outdoor Media*, as a matter of our discretion, we may affirm a trial court's ruling on a basis that was not relied upon by the court if (1) "the facts of record [are] sufficient to support the alternative basis for affirmance"; (2) "the trial court's ruling [is] consistent with the view of the evidence under the alternative basis for affirmance"; and (3) "the record materially [is] the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below." *Id.*

We begin by noting that, when a defendant moves for a judgment of acquittal at the close of the state's case-in-chief, and then presents evidence in his defense, we consider the whole record to determine whether there is sufficient evidence to support a verdict against the defendant. *State v. Patton*, 259 Or App 80, 83 n 2, 312 P3d 581 (2013). Here, to support its argument, the state relies on evidence that the

victim answered a call from defendant early in the morning of June 8, 2013, (during which she told defendant not to call her again). The state argues that a factfinder could infer that the victim's telephone made an audible sound at that point because she answered the call. From that inference, the state further argues that a reasonable factfinder could draw an additional inference that the victim's telephone made an audible sound later in the morning when defendant placed the calls resulting in the two voicemails.

We decline to consider the state's argument because it fails to satisfy the criteria necessary for us to exercise our discretion to review an alternative basis for affirmance. Here, even if we assume that the inferences urged by the state are reasonable as opposed to mere speculation, had the prosecutor made the argument below that the state now makes, the "record might well have developed differently." *See Outdoor Media*, 331 Or at 659-60 (noting that one of the criteria for discretionary review of alternative bases for affirmance is whether, had an argument been made in the trial court, the record could have developed in a materially different way). As noted, the trial court denied defendant's motion for judgment of acquittal after concluding that "[c]ausing the phone call to be initiated or triggered on the phone I think is the meaning of ring as used here." That ruling removed from the case the factual issue of whether the victim's telephone emitted an audible sound, and, as the state's argument indicates, at the time of the court's ruling, the record contained no direct evidence that the victim's telephone had emitted an audible sound as a result of defendant's calls. Accordingly, after the court explained its basis for denying defendant's motion, defendant did not have a reason to further develop the record on that point in his case-in-chief. Given that, it would be inappropriate to review the state's alternative basis for affirmance, particularly given the stacking of inferences upon which the state relies. *See State v. Nascimento*, 360 Or 28, 37-38, 379 P3d 484 (2016) (refusing to consider alternative basis for affirmance where the evidence relied on by the state was "equivocal and weak, at best," and, had the state relied on it in opposition to the defendant's motion for a judgment of acquittal, the defendant could easily have countered it in her own case-in-chief).

Accordingly, we proceed to the issue that is before us—the proper construction of the statutory phrase "causing such other person's telephone to ring" in ORS 166.090(1)(b). In interpreting a statute, our goal is to determine legislative intent by analyzing the text of the statute in context, considering any relevant legislative history, and, if necessary, applying maxims of statutory construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

Generally, "the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Unless a word or phrase has a specialized meaning, we typically give "words of common usage" their "plain, natural, and ordinary meaning." *Id.* at 611. The ordinary meaning of a word is presumed to be what is reflected in a dictionary. *See Jenkins v. Board of Parole*, 356 Or 186, 194, 335 P3d 828 (2014). Nevertheless, "[i]n construing statutes, we do not simply consult dictionaries and interpret words in a vacuum." *State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011). When the dispute "centers on the meaning of a particular word or words, a dictionary definition—although providing some evidence of meaning—should not be relied on to resolve a dispute about plain meaning without critically examining how the definition fits into the context of the statute itself." *State v. Gonzalez-Valenzuela*, 358 Or 451, 461, 365 P3d 116 (2015). However, "[t]he formal requirements of lawmaking produce the best source from which to discern the legislature's intent, for it is not the intent of the individual legislators that governs, but the intent of the legislature as formally enacted into law[.]" *Gaines*, 346 Or at 171. Accordingly, "a party seeking to overcome seemingly plain and unambiguous text with legislative history has a difficult task before it." *Id.* at 172.

ORS 166.090(1) provides:

"A telephone caller commits the crime of telephonic harassment if the caller intentionally harasses or annoys another person:

"(a) By causing the telephone of the other person to ring, such caller having no communicative purpose;

"(b)   By causing such other person's telephone to ring, knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone; or

"(c)   By sending to, or leaving at, the other person's telephone a text message, voice mail or any other message, knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone."

Here, defendant asserts that the phrase "[b]y causing such other person's telephone to ring" in ORS 166.090(1)(b) unambiguously requires the "other person's telephone" to make an audible sound. Given the context in which "ring" is used in subsection (1)(b), we agree that the relevant dictionary definitions all reflect the concept that "to ring" consists of an audible sound. For example, "ring" is defined as "**1 :** to sound clearly and resonantly <the ~ing of many bells> * * * **2 :** to sound loudly and sonorously * * * **3a :** to be filled with a ringing or reverberating sound." *Webster's Third New Int'l Dictionary* 1958 (unabridged ed 2002).[4] Although "ring" is also defined as "a telephone call—often used with *give*," *id.* (emphasis in original), that definition does not fit within the context here given that the statute requires the caller to "cause" the other person's telephone "to ring." If the legislature intended "ring" to mean simply "a telephone call" the use of "cause" and the reference to "such other person's telephone" would not have been necessary. *See Gonzalez-Valenzuela*, 358 Or at 461 ("[C]ontext may dictate applying one definition rather than another, if the dictionary contains multiple definitions for a relevant term."). Thus, the ordinary meaning of "to ring," as used in ORS 166.090(1)(b), appears to require that the caller caused the "other person's" telephone to emit an audible sound.

The state acknowledges that "the plain meaning of 'ring' implies that a 'telephone must make an audible sound.'" Nevertheless, the state relies heavily on the legislative

---

[4] *See State v. James*, 266 Or App 660, 667 n 3, 338 P3d 782 (2014) ("Because the content of *Webster's*—excluding the addenda section—has remained static since 1961, in general, it is appropriate to treat it as a contemporaneous source for statutes dating from at least that point forward[.]").

history of House Bill (HB) 2903 (1987), which was later codified as ORS 166.090, to argue that ascribing the plain meaning to "ring" would render the term an anachronism and frustrate the legislature's intent. Instead, the state urges us to look past the ordinary meaning of "ring" and "give effect to the legislature's intent." In doing so, the state focuses on legislative history that shows that HB 2903 was crafted to protect a person's property interest in his or her telephone from trespass by a person making calls to that telephone after having been told not to do so. In the state's view, given that the legislature intended to prevent "trespasses" on the victim's telephone, it makes no difference whether the victim's telephone emits an audible sound—it matters only whether the person is being precluded from using their telephone by the caller.

The legislative history relied on by the state is compelling in some respects, although it ignores the broader context in which the legislature passed HB 2903. By the time the legislature took HB 2903 under consideration in the 1987 legislative session, the Supreme Court had struck down two prior versions of telephonic harassment statutes as unconstitutional. Under the first, ORS 166.065 (1979), a person committed the crime of "harassment" if, among other things, he communicated by telephone with the intent to harass, annoy, or alarm another person "in a manner likely to cause annoyance or alarm." In *State v. Blair*, 287 Or 519, 524, 601 P2d 766 (1979), the Supreme Court declared the statute unconstitutionally vague, noting that the communication "need not cause any harm at all, in the form of annoyance, alarm, or otherwise. It is sufficient if the manner of communication is in fact 'likely' to do so, whether the defendant knew this or not." In short, the court declared the statute "constitutionally inadequate because it did not require an 'effect' on the listener and the prohibited conduct was not narrowly defined." *State v. Ray*, 302 Or 595, 599, 733 P2d 28 (1987) (explaining the holding in *Blair*).

In response to *Blair*, the legislature amended the harassment statute in the 1981 legislative session, adding a provision to ORS 166.065 that made it harassment to subject another to alarm or annoyance "by telephonic use of

obscenities or description of sexual excitement or sadomasochistic abuse or sexual conduct as defined in ORS 167.060 * * *, which use or description is patently offensive and otherwise obscene as defined in ORS 167.087(2)(b) and (c)[.]" ORS 166.065(1)(e) (1981). In *Ray*, the Supreme Court declared that statute unconstitutionally vague and overbroad, noting that the prohibited conduct was too broadly defined, and that it potentially reached privileged speech. 302 Or at 600-01. The statute did not adequately restrict the proscribed conduct to that which was "unwanted, unsolicited or nonconsensual" and the criminalized conduct was not restricted to "the person placing the call." *Id.* Further, the court concluded that the statute was vague because it incorporated a definition of "obscene" that failed to warn a person that "certain types of conduct will subject the offender to criminal prosecution and sanctions." *Id.* at 601.

As such, it was against that historical backdrop that HB 2903 was crafted in an effort to provide some relief to persons receiving harassing telephone calls. The legislative history of HB 2903 reflects that the bill was drafted to provide relief while still passing constitutional muster. Staff Measure Analysis, House Committee on Judiciary, Subcommittee 1, HB 2903, Mar 19, 1987. To do so, and to avoid the problems identified in *Ray* and *Blair* (*i.e.*, the failure to require an "effect on the listener," the failure to narrowly define the prohibited conduct, and the impermissible restriction on privileged speech), the bill was drafted with a "basis * * * in trespass." *Id.*

Accordingly, HB 2903 was intended to proscribe harassing conduct, not the content of communication. Various statements during the debate of the bill noted that HB 2903 was drafted to reflect a "trespass theory," which was directed at "[t]he person who calls, who knows that he's not authorized, who has been advised that he's not authorized to use this piece of property and calls nevertheless is in fact using property without your permission." Tape Recording, Senate Committee on the Judiciary, HB 2903, June 4, 1987, Tape 172, Side A (statement of Frank Gruber). In short, the legislature chose to prohibit the conduct of "unauthorized use of another's property—the telephone." Staff Measure

Analysis, House Committee on Judiciary, Subcommittee 1, HB 2903, Mar 19, 1987.

Thus, the legislative history provides some support for the state's position that, under a "trespass theory," whether a person's telephone emits an audible sound is immaterial to the harm on which the legislature was focused—*i.e.*, the unauthorized use of another's property. Nevertheless, that history also demonstrates that, in drafting the particular text of the statute, the legislature intended to narrowly define the prohibited conduct to avoid a repeat of the constitutional problems that plagued the earlier telephonic harassment statutes. Further, the legislative history is also replete with references to the specific conduct that the legislature chose to prohibit—"causing such other person's telephone to ring"—and none of those references contradict the assumption that the legislature meant to use a word of common usage—in this case, "ring"—in its ordinary sense.

Ultimately, as noted, "a party seeking to overcome seemingly plain and unambiguous text with legislative history has a difficult task before it." *Gaines*, 346 Or at 172. "Even assuming that the legislative history supported [the state's] interpretation, we are required not to construe a statute in a way that is inconsistent with its plain text." *Suchi v. SAIF*, 238 Or App 48, 55, 241 P3d 1174 (2010), *rev den*, 350 Or 231 (2011). Here, the state cannot overcome the seemingly plain and unambiguous text of ORS 166.090(1)(b), which requires the caller to cause the "other person's" telephone "to ring"—*i.e.*, emit an audible sound.[5]

It may be that this is a case in which the statutory text, at least subsection (1)(b), "appears not to have been written for the digital world in which we live." *State v. Barger*, 349 Or 553, 570, 247 P3d 309 (2011) (DeMuniz, C. J., concurring). To the extent that this is an instance where the statutory text chosen by the 1987 Legislative Assembly has been outpaced by advancements in telephone technology—and this indeed seems like such an instance—it is not for

---

[5] Given the basis on which the court denied defendant's motion for judgment of acquittal, this case does not require us to decide what kind of audible sound would qualify as a "ring" under ORS 166.090(1)(b).

the courts to alter the plain text of a statute in light of those advances.[6]

Convictions on Counts 2 and 3 for telephonic harassment reversed; otherwise affirmed.

---

[6] We note that the legislature amended ORS 166.090(1) in 2005 to add paragraph (c), which prohibits leaving or sending text messages, voicemails or "any other messages" after having been forbidden from doing so. Or Laws 2005, ch 752, § 1. Presumably, that amendment was intended to keep pace with some of the advances in telephone technology. Nevertheless, as noted, the state did not charge defendant under that provision.