Argued and submitted January 30, reversed November 18, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN X. McQUEEN,
aka Steven Zavier McQueen,
*Defendant-Appellant.*

Multnomah County Circuit Court
17CR82739; A168469

478 P3d 581

Defendant, who surreptitiously recorded an otherwise consensual sexual encounter, appeals a judgment of conviction for one count of second-degree invasion of personal privacy, ORS 163.700(1)(b). That count required that the state prove that the person defendant recorded had "a reasonable expectation of privacy concerning" her "intimate area." ORS 163.700(1)(b)(B). As defined in ORS 163.700(2)(f), a person has "a reasonable expectation of privacy concerning [an] intimate area" when "the person intended to protect the intimate area from being seen and has not exposed the intimate area to public view." On appeal, defendant assigns error to the trial court's denial of his motion for a judgment of acquittal, arguing that because the person he recorded consented to having sexual intercourse with him, she did not evince a desire to protect her intimate area from being seen by him. *Held*: The trial court erred. No rational trier of fact could have found that the person defendant recorded had a "reasonable expectation of privacy concerning" her "intimate area," as that phrase is used in ORS 163.700 (1)(b)(B), because no rational trier of fact could determine that she intended to protect her "intimate area from being seen," within the meaning of ORS 163.700(2)(f).

Reversed.

David F. Rees, Judge.

Kali Montague, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Reversed.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for one count of second-degree invasion of personal privacy, ORS 163.700. On appeal, defendant assigns error to the trial court's denial of his motion for a judgment of acquittal with respect to that count. We agree with defendant that the trial court erred. Consequently, we reverse.

The relevant facts are few and undisputed. Defendant and M had a sexual relationship. One day, M went to defendant's home and had sex with him. Defendant surreptitiously filmed M and himself having intercourse. M did not know defendant was filming them, and she did not consent to being recorded engaged in that sexual encounter.

Subsequently, M discovered the videotape that defendant had made and reported the incident to police.

Defendant was charged with one count of second-degree invasion of personal privacy, ORS 163.700. That statute provides, in relevant part:

"(1)   *** [A] person commits the crime of invasion of personal privacy in the second degree if:

"*****

"(b)(A)   The person knowingly makes or records a photograph, motion picture, videotape or other visual recording of another person's intimate area without the consent of the other person; and

"(B)   The person being recorded has a reasonable expectation of privacy concerning the intimate area."

"[I]ntimate area" means "nudity, or undergarments that are being worn by a person and are covered by clothing." ORS 163.700(2)(a). "Reasonable expectation of privacy concerning the intimate area" means "that the person intended to protect the intimate area from being seen and has not exposed the intimate area to public view." ORS 163.700 (2)(f).[1]

---

[1] "Public view" is defined in ORS 163.700(2)(e) to mean "that an area can be readily seen and that a person within the area can be distinguished by normal unaided vision when viewed from a public place as defined in ORS 161.015."

During defendant's trial, at the end of the state's case-in-chief, defendant moved for a judgment of acquittal. Defendant argued that the state failed to prove that M had a "reasonable expectation of privacy concerning [her] intimate area." In defendant's view, the state failed to prove that element of the offense, because evidence did not reflect that M "intended to keep any part of her body from being seen by [defendant]" and, therefore, "no rational finder of fact could conclude that that *** element of this offense[] has been satisfied."

The trial court denied defendant's motion, concluding that the phrase "the person intended to protect the intimate area from being seen" means that the person intended to protect the intimate area from "being seen by the public."

On appeal, defendant contends that the trial court erred in denying his motion for a judgment of acquittal. Defendant contends that, because M consented "to having sexual intercourse with defendant and did not evince a desire to protect her intimate area from being seen by defendant," he did not "commit second-degree invasion of personal privacy as charged in this case." Defendant posits that the "legislative history and the context of the invasion of privacy statutes show that the legislature intended [ORS 163.700(1)(b)] to cover so-called 'up-skirting' and 'down-blousing'—acts of surreptitiously recording or taking pictures up women's skirts or down their blouses in public areas."

Defendant maintains that ORS 163.700(1)(b) "was not intended to cover surreptitiously recording intimate encounters in private spaces" and that "that conduct is captured by other statutory provisions." Defendant acknowledges that his conduct was "likely criminal" under ORS 163.701, the statute setting forth the crime of first-degree

"Public place" is defined in ORS 161.015(10) to mean

"a place to which the general public has access and includes, but is not limited to, hallways, lobbies and other parts of apartment houses and hotels not constituting rooms or apartments designed for actual residence, and highways, streets, schools, places of amusement, parks, playgrounds and premises used in connection with public passenger transportation."

invasion of personal privacy but notes that "the state did not charge him under that statute."[2]

The state, for its part, argues that "statutory text and context, legislative history, and maxims of construction show that a person who intends to keep the general public from seeing her intimate areas *does* intend to keep those areas 'from being seen'" within the meaning of ORS 163.700(2)(f), "even if she simultaneously intends for a romantic partner to see them," and, accordingly, the trial court correctly denied the motion for acquittal.

Where, as here, "'the dispute on review of a ruling on a motion for a judgment of acquittal centers on the meaning of the statute defining the offense, the issue is one of statutory construction'" that "we review for legal error." *State v. Velasquez*, 286 Or App 400, 404, 400 P3d 1018 (2017) (quoting *State v. Hunt*, 270 Or App 206, 209-10, 346 P3d 1285 (2015)). After we "settle the legal issue," we "determine whether a rational trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt." *State v. Bowen*, 280 Or App 514, 516, 380 P3d 1054 (2016) (internal quotation marks omitted); *see also Hunt*, 270 Or App at 209 ("We generally review the denial of a motion for a judgment of acquittal by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element of the crime beyond a reasonable doubt." (Internal quotation marks omitted.)).

Given the parties' arguments and the trial court's ruling, the first issue before us is the proper construction of the statutory phrase "intended to protect the intimate

---

[2] As relevant here, ORS 163.701(1)(a) provides that, subject to certain exceptions, a person commits the crime of first-degree invasion of personal privacy if:

"(A) The person knowingly makes or records a photograph, motion picture, videotape or other visual recording of another person in a state of nudity without the consent of the other person; and

"(B) At the time the visual recording is made or recorded the person being recorded is in a place and circumstances where the person has a reasonable expectation of personal privacy[.]"

area from being seen" in ORS 163.700(2)(f).[3] In interpreting statutes, "we seek to determine the legislature's intention, by reviewing the statutory text and context, and, if the court concludes that it appears useful to the analysis, the legislative history." *TriMet v. Amalgamated Transit Union Local 757*, 362 Or 484, 493, 412 P3d 162 (2018). "In conducting that examination, we keep in mind what the legislature has told us about how it wants us to read the words it has written: 'In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted.'" *Tarr v. Multnomah County*, 306 Or App 26, 33, 473 P3d 603 (2020) (quoting ORS 174.010; brackets omitted).

Generally, "the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Unless a word or phrase has a specialized meaning, we typically give "words of common usage" their "plain, natural, and ordinary meaning." *Id.* at 611. "The ordinary meaning of a word is presumed to be what is reflected in a dictionary." *State v. Shifflett*, 285 Or App 654, 661, 398 P3d 383 (2017).

The word "seen" means "perceived or verified by sight." *Webster's Third New Int'l Dictionary* 2056 (unabridged ed 2002). It is also the past participle of the verb "to see," which means, as relevant here, "to perceive by the eye : apprehend through sight." *Id.* at 2054; *see State v. Oliver*, 221 Or App 233, 237, 189 P3d 1240, *rev den*, 345 Or 318 (2008) (relevant dictionary definition is the one that "seems most relevant to the use of the word in the statute"). We thus understand a person to have a "reasonable expectation of privacy concerning the intimate area," as that phrase is used in ORS 163.700(1)(b)(B), only if the person "intend[ed] to protect the intimate area" from being "perceive[d] by the eye" or "apprehend[ed] through sight." And, conversely, if a person intentionally exposes an intimate area to another

---

[3] We do not address the proper construction of the phrase "has not exposed the intimate area to public view," ORS 163.700(2)(f), because defendant does not contend that the state failed to prove that M did "not expose[] the intimate area to public view."

person, allowing the "intimate area" to be "perceive[d] by the eye" or "apprehend[ed] through sight," the person exposing the intimate area does not have "a reasonable expectation of privacy concerning the intimate area," as that phrase is used in ORS 163.700(1)(b)(B), at least as to that person.

As noted above, the state argues that a person "who intends to keep the general public from seeing her intimate areas *does* intend to keep those areas 'from being seen'" within the meaning of ORS 163.700(2)(f), "even if she simultaneously intends for a romantic partner to see them." That argument is untenable given the text of ORS 163.700(2)(f). Accepting it would require us to, in effect, append the words "by the general public" to the end of the phrase "intended to protect the intimate area from being seen" in ORS 163.700 (2)(f), so that the text would, in effect, read "intended to protect the intimate area from being seen by the general public." We are prohibited from doing so. *State v. Patton*, 237 Or App 46, 50-51, 238 P3d 439 (2010), *rev den*, 350 Or 131 (2011) ("We are prohibited, by statutory command and by constitutional principle, from adding words to a statute that the legislature has omitted.").

We next turn to context—specifically, a prior version of ORS 163.700 and the state of the law in Oregon prior to creation of the crime of second-degree invasion of personal privacy—as well as legislative history. *Pete's Mountain Homeowners v. Ore. Water Resources*, 236 Or App 507, 520, 238 P3d 395 (2010) ("Consideration of prior versions of a statute certainly is appropriate as part of a statute's context."); *Mastriano v. Board of Parole*, 342 Or 684, 693, 159 P3d 1151 (2007) ("[W]e generally presume that the legislature enacts statutes in light of existing judicial decisions that have a bearing on those statutes."). Context and legislative history support our understanding that if a person intentionally exposes an intimate area to another person, allowing the intimate area to be "perceive[d] by the eye" or "apprehend[ed] through sight," the person exposing the intimate area does not have "a reasonable expectation of privacy concerning the intimate area," as that phrase is used in ORS 163.700(1)(b)(B), at least as to that person.

As described more fully below, context and legislative history reflect that the "manifest general legislative intent" behind the creation of the version of the crime of second-degree invasion of personal privacy with which defendant was charged was to criminalize conduct sometimes referred to as "up-skirting" and "down-blousing."[4] *DCBS v. Muliro*, 359 Or 736, 753, 380 P3d 270 (2016) (noting that, in general, "an examination of legislative history is most useful when it is able to uncover the manifest general legislative intent behind an enactment" (internal quotation marks omitted)).

Prior to 2015, ORS 163.700 described the crime of "invasion of personal privacy." A person committed that crime if they created nonconsensual "photograph[s], motion picture[s], videotape[s] or other visual recording[s]" of another person, but only when the other person was (1) "in a state of nudity" and (2) "in a place and circumstances where the person ha[d] a reasonable expectation of personal privacy." ORS 163.700 (2013), *amended by* Or Laws 2015, ch 321, §§ 1, 4; Or Laws 2016, ch 72, § 11.[5]

---

[4] That is, the conduct of "surreptitiously tak[ing] photographs of women up their skirts or down their blouses." Danielle Keats Citron, *Sexual Privacy*, 128 Yale LJ 1870, 1914 (2019). Such "up-skirt" and "down-blouse" photographs "violate sexual privacy" and "undermine[] the victim's decision to shield her genitalia and breasts from the public." *Id.*

[5] ORS 163.700(1) (2013) provided:

"Except as provided in ORS 163.702, a person commits the crime of invasion of personal privacy if:

"(a)(A) The person knowingly makes or records a photograph, motion picture, videotape or other visual recording of another person in a state of nudity without the consent of the person being recorded; and

"(B) At the time the visual recording is made or recorded the person being recorded is in a place and circumstances where the person has a reasonable expectation of personal privacy; or

"(b)(A) For the purpose of arousing or gratifying the sexual desire of the person, the person is in a location to observe another person in a state of nudity without the consent of the other person; and

"(B) The other person is in a place and circumstances where the person has a reasonable expectation of personal privacy."

ORS 163.700(2)(c) (2013) provided that "'[p]lace[] and circumstances where the person has a reasonable expectation of personal privacy' includes, but is not limited to, a bathroom, dressing room, locker room that includes an enclosed area for dressing or showering, tanning booth and any area where a person undresses in an enclosed space that is not open to public view."

In 2015, the legislature passed House Bill (HB) 2596 (2015), which amended ORS 163.700. HB 2596 was designed to "expand[] the statute to prohibit the nonconsensual recording of a person's intimate areas, regardless of whether that person is nude or in a private place." Preliminary Staff Measure Summary, Senate Committee on Judiciary, HB 2596 A, May 11, 2015.

The amendments to ORS 163.700 set forth in HB 2596 created a new crime of second-degree invasion of personal privacy, which a person commits when that person "knowingly makes or records a photograph, motion picture, videotape or other visual recording of another person's intimate area without the consent of the other person," and the "person being recorded has a reasonable expectation of privacy concerning the intimate area." Or Laws 2015, ch 321, §§ 1, 4. "Reasonable expectation of privacy concerning the intimate area" was defined to mean "the person intended to protect the intimate area from being seen and has not exposed the intimate area to public view," and "intimate area" was defined as "nudity, or undergarments that are being worn by a person and are covered by clothing." *Id.* § 1.[6]

In introducing HB 2596 to the House Committee on Judiciary, the bill's co-sponsor, Representative Peter Buckley, told his colleagues, "Who would have thought that we'd actually be having this as an issue come before the Oregon legislature to have to resolve the idea of up-skirting." Audio Recording, House Committee on Judiciary, HB 2596, Feb 18, 2015 at 2:21 (comments of Rep Peter Buckley), https://olis.oregonlegislature.gov (accessed Oct 14, 2020). Another co-sponsor, Representative Andy Olsen commented

---

[6] A different bill, House Bill (HB) 2356 (2015), created the crime of first-degree invasion of personal privacy, which a person commits if they engage in the conduct previously covered by ORS 163.700 (2013)—*i.e.*, "[t]he person knowingly makes or records a photograph, motion picture, videotape or other visual recording of another person in a state of nudity without the consent of the other person" and "[a]t the time the visual recording is made or recorded the person being recorded is in a place and circumstances where the person has a reasonable expectation of personal privacy." Or Laws 2015, ch 645, § 2; *see also* ORS 163.701(1)(a) (defining one way to commit the crime of first-degree invasion of personal privacy). The change made such conduct a more serious crime: Prior to passage of HB 2356, the conduct now proscribed by ORS 163.701(1)(a) was a Class A misdemeanor. ORS 163.700(3) (2013). HB 2356 made such conduct into a Class C felony. Or Laws 2015, ch 645, § 2; ORS 163.700(2)(a).

on the "timeliness" of HB 2596, noting that "Wisconsin is working really hard on doing a bill that addresses down-blousing and up-skirting," and that he thought that HB 2596 could be a "great role-model bill" for the "rest of the states in the country" on those topics. Audio Recording, House Committee on Judiciary, HB 2596, Feb 18, 2015 at 3:30 (comments of Rep Andy Olsen), https://olis. oregonlegislature.gov (accessed Oct 14, 2020).

HB 2596 was "requested" by the Oregon Education Association (OEA) to "close" what they viewed as "a gap in [Oregon] laws pertaining to invasions of personal privacy." Testimony, House Committee on Judiciary, HB 2596, Feb 18, 2015, Ex 4 (statement of Laurie Wimmer). A representative from OEA, Laurie Wimmer, provided testimony to both the House Committee on Judiciary and the Senate Committee on Judiciary regarding HB 2596, characterizing the bill as an "[u]pskirting prohibition." *Id.*; Testimony, Senate Committee on Judiciary, HB 2596, May 11, 2015, Ex 4 (statement of Laurie Wimmer). Wimmer explained to both committees that up-skirting is a "phenomenon" involving "the surreptitious recording of images of people's intimate areas using flip phones, and then circulating and sharing the stolen images on social media," but that such conduct is "not illegal conduct in Oregon if the unsuspecting victim is wearing underwear—because the images taken are not specifically 'nude' photos." Testimony, House Committee on Judiciary, HB 2596, Feb 18, 2015, Ex 4 (statement of Laurie Wimmer); Testimony, Senate Committee on Judiciary, HB 2596, May 11, 2015, Ex 4 (statement of Laurie Wimmer). Wimmer provided a newspaper article to both committees titled "Taking photos up girl's skirt at Beaverton Target: Appalling, but not a crime, judge rules," which concerned a Washington County criminal case, wherein the defendant was acquitted of two counts of invasion of personal privacy, notwithstanding that the defendant took photographs up a 13-year-old girl's skirt in a Target store. Testimony, House Committee on Judiciary, HB 2596, Feb 18, 2015, Ex 4 (statement of Laurie Wimmer); Exhibit 5, House Committee on Judiciary, HB 2596, Feb 18, 2015 (newspaper article accompanying statement of Laurie Wimmer); Senate Committee on Judiciary, HB 2596, May 11, 2015, Ex 4 (statement of

Laurie Wimmer). The article quoted the prosecutor following the acquittals acknowledging that what the defendant in the case did was "not a crime" under "the current interpretation of Oregon law." Exhibit 5, House Committee on Judiciary, HB 2596, Feb 18, 2015 (newspaper article accompanying statement of Laurie Wimmer).

Additionally, both committees heard testimony from a middle school teacher about a student at her middle school who had taken pictures underneath the teacher's ankle-length dress, and that pictures had been found on students' phones of "adolescent female classmates with exposed gaps in their shirts," many of which "showed the undergarments of the girls," but that such conduct was not criminal under Oregon law. Testimony, House Committee on Judiciary, HB 2596, Feb 18, 2015, Ex 6 (statement of Dana Lovejoy); Audio Recording, Senate Committee on Judiciary, HB 2596, May 11, 2015 at 28:37 (statement of Dana Lovejoy), https:// olis.oregonlegislature.gov (accessed Oct 14, 2020).

In sum, the context and legislative history of ORS 163.700 reflect that the "manifest general legislative intent" in creating the crime of second-degree invasion of personal privacy, as set forth in ORS 163.700(1)(b), was to criminalize "up-skirting" and "down-blousing," not to criminalize defendant's conduct in this case, *viz.*, surreptitiously recording an otherwise consensual sexual encounter.

In light of the foregoing, considering the text, context, and legislative history of ORS 163.700, we conclude that under the provisions of ORS 163.700 if a person intentionally exposes an "intimate area" to another person, allowing the "intimate area" to be "perceive[d] by the eye" or "apprehend[ed] through sight," the person exposing the intimate area does not have "a reasonable expectation of privacy concerning the intimate area," as that phrase is used in ORS 163.700(1)(b)(B), at least as to that person.[7]

---

[7] This opinion does not address other situations that might arise, such as a peeping tom standing outside watching two people engaged in a sexual encounter. The only issue we address in this case is whether M had a "reasonable expectation of privacy concerning the intimate area," as that phrase is used in ORS 163.700(1)(b)(B).

As defendant acknowledges, defendant's conduct was perhaps criminal under a different statute, ORS 163.701, but that is not the crime with which defendant was charged.

Having construed ORS 163.700, we now turn to the second issue in this case, *viz.*, whether "a rational trier of fact could have found that the essential elements" of second-degree invasion of personal privacy, ORS 163.700(1)(b), "had been proved beyond a reasonable doubt." *Bowen*, 280 Or App at 516 (internal quotation marks omitted). Given the facts of this case, we conclude that no rational trier of fact could find that M had a "reasonable expectation of privacy concerning the intimate area," ORS 163.700(1)(b)(B), because no rational trier of fact could determine that M "intend[ed] to protect [her] intimate area from being seen" within the meaning of ORS 163.700(2)(f). We therefore reverse.

Reversed.