No. 911 October 22, 2025 313

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRIAN OLIVER BERKEY,
*Defendant-Appellant.*

Benton County Circuit Court
21CR07986; A180863

Locke A. Williams, Judge.

Argued and submitted November 21, 2024.

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Reversed.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for one count of violating a stalking protective order (SPO), ORS 163.750(2)(b), by "waiting outside" his ex-girlfriend C's home. In a single assignment of error, defendant contends that the trial court erred in denying his motion for judgment of acquittal (MJOA). He argues that he was not "[w]aiting outside" C's home, as set forth in ORS 163.730(3)(c), by sitting in his parked car approximately 3,000 feet away from C's home. We agree, and therefore, reverse.

When the denial of an MJOA turns on the interpretation of statutory terms, we review that interpretation for legal error. *State v. McQueen*, 307 Or App 540, 544, 478 P3d 581 (2020). We then determine whether, after viewing the facts and all reasonable inferences in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. We state the facts in accordance with that standard.

C and defendant had dated for about a year. After that relationship ended in 2019, C obtained a valid SPO against defendant that prohibited him from, among other things, waiting outside her home or property. On an evening in February 2021, Deputy Weikel noticed a truck parked on the side of a public road near a downed power line. He stopped because he suspected that someone might be stealing metal. Defendant, who was in the driver's seat of the truck, told Weikel that he was resting because he was tired and had run out of gas. The officer drove off, ran a "wanted check" on defendant, and learned that C had a valid SPO against defendant. Weikel was familiar with C and knew that she lived approximately 3,000 feet, or about half a mile, up the street from where defendant was parked.

After learning about the SPO, Weikel looped back and saw defendant still parked in the same place. Approximately 10 minutes had passed since Weikel first made contact with defendant. Weikel and another officer made contact again with defendant. Weikel informed defendant that he was aware of the protective order C had against him. Defendant responded that he knew C lived up the road,

but denied violating the SPO. Defendant said that he was "not stalking [C and her family]; he was guarding them." He also told officers that he was "just doing his duty." The officers did not notice any weapons or visual enhancement devices in defendant's vehicle. The officers arrested defendant.

The state charged defendant with violating the SPO against him by "waiting outside the home, property, place of work or school of [C]."[1] Defendant waived his right to a jury, and the case was tried to the court. The state presented the testimony of the two officers and C. C testified that she had had no communications with defendant that day and had not asked for his protection. She said that, when she left her house, she usually took a route that would have taken her past where defendant was parked. The state did not present any evidence that C or her family were aware of defendant's presence on that evening.

After the state rested its case, defendant moved for a judgment of acquittal. Defendant acknowledged that the state had established the preliminary elements of the offense—that there was a valid SPO and that defendant was aware of it—and that the key issue was whether he was waiting outside C's home. The parties contested whether defendant's statements to the police and his location 3,000 feet away from C's home were sufficient to establish that he violated the SPO by waiting outside C's home. The court denied the MJOA, explaining that "there has been sufficient evidence through inference that there's no other reasonable explanation for [defendant's] presence at that location. While it is not directly in front of the residence, it is at a point where anyone going to or from the residence would be passing by." The defense then rested without presenting any witnesses or any other evidence. After closing arguments, the court found defendant guilty beyond a reasonable doubt of violating the SPO. The court concluded that, considering all the circumstances—including the rural setting, defendant's location along the most common route to and from C's property, and his statements to the police—defendant was

---

[1] The state originally charged defendant with two counts of violating an SPO (Counts 1 and 2) and one count of stalking (Count 3). Prior to trial, the state dismissed Counts 2 and 3.

waiting outside C's home when he remained in his parked vehicle 3,000 feet away.

On appeal, defendant reiterates that the trial court should have granted his MJOA because the state failed to prove that he had waited outside C's home in violation of the SPO, which defines the prohibited contact in the same manner as ORS 163.730(3). He argues that for conduct to occur "outside" a particular place, there must be an element of close proximity to the boundary defining that place, and that his location approximately half a mile away did not meet that requirement. The state does not dispute defendant's interpretation of the word "outside." Rather, the state argues that, under the unique circumstances of this case, it is not inconsistent with the ordinary meaning of "outside" to conclude that defendant's actions constituted waiting outside C's home.[2]

The SPO incorporated the enumerated forms of prohibited contact in ORS 163.730(3), including "[w]aiting outside the home, property, place of work or school of the other person or of a member of that person's family or household." ORS 163.730(3)(c). Whether defendant's conduct falls within the meaning of "waiting outside" as used in ORS 163.730(3)(c) is a matter of statutory construction. We construe a statute to determine the legislature's intent by examining the statute's text, context, and any relevant legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The "text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993).

Turning to the text of the statute, we typically give terms of common usage their "plain, natural, and ordinary meaning," *id.* at 611, which "is presumed to be what is reflected in a dictionary," *State v. Shifflett*, 285 Or App 654, 661, 398 P3d 383 (2017). As used in this context, "outside" is a preposition defined as "**1 :** on the outer side of <the American flag ~ my building—William Barrett> *** **3 :** to

---

[2] Both parties focus their discussion on the interpretation of "outside," and appear to accept that the state presented sufficient evidence that defendant was "waiting" for C.

the outside of <ran ~ the house>." *Webster's Third New Int'l Dictionary* 1604 (unabridged ed 2002). We agree with defendant that the term "outside," as used in ORS 163.730(3)(c), indicates an element of proximity or nearness to the protected person's "home, property, place of work or school." *See M. C. H. v. Milligan*, 208 Or App 229, 237, 145 P3d 180 (2006) (the respondent waited outside the petitioner's workplace by parking "directly in front of" the salon where she worked); *S. L. P. v. Brubaker*, 178 Or App 360, 370, 37 P3d 186 (2001) (the respondent waited outside the petitioner's home by parking in front of her home).

In this case, the prosecution argues that the evidence was sufficient to find that defendant was waiting "outside the home [or] property" under ORS 163.730(3)(c). But the state did not offer any evidence to the court about the location—beyond that it was approximately half a mile from the victim's house—that would allow us to infer that, despite that distance, we should conclude the evidence met the statutory definition. To the extent the state argues that the trial court could reasonably have made that inference based on the totality of the circumstances, we disagree.

We acknowledge that it is perhaps inferable that defendant chose to park at that location because he knew it was likely that he could intercept C there if she left her home. We further acknowledge that the purpose of a protective order and ORS 163.730 is to prevent a protected party from being subjected to prohibited contacts. But other aspects of the SPO protected C from unwanted contact, such as the section prohibiting defendant from "[c]oming into [C's] visual or physical presence." In this case, defendant was charged with violating the prohibition from "waiting outside" C's home—and to prove that charge, the state presented evidence that defendant was parked on a public road 3,000 feet away from C's home. Even considering the factual context, the state's interpretation strains the definition of "outside" too far past its plain and ordinary meaning. The state has not established the element of proximity between defendant's location and C's home.

We need not define the precise parameters of what constitutes "waiting outside" for purposes of ORS 163.730(3)(c)

because we conclude that no rational factfinder could find, under the circumstances of this case, that defendant was "waiting outside" C's home or property when he remained parked on a public roadway over half a mile away.[3] For that reason, the trial court erred when it denied defendant's MJOA.

       Reversed.

---

[3] Our decision is limited to the particular facts of this case. We do not address or decide the meaning of "waiting outside" in different potential situations, such as when an individual parks directly outside a gated community, but over half a mile from a protected person's home.